UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ABDELHAFIZ M. NOFAL,　　　　　　　　　　　Case No.: 22-CV-03104-MKV

　　　　　　　　　　Plaintiff,　　　　　　　**STATEMENT OF MATERIAL FACTS IN <u>OPPOSITION</u> TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

　　-against-

IMCMV TIMES SQUARE LLC d/b/a
MARGARITAVILLE RESORT TIMES SQUARE,

　　　　　　　　　　Defendants.
-------------------------------------------------------------------X

Pursuant to Local Civil Rule 56.1 and Section 5(C) of the Court's Individual Practices, Plaintiff Abdel Nofal ("Plaintiff" or "Nofal") respectfully submits the following statement of material facts in opposition to the Defendant's Motion for Summary Judgment.

**Background on IMCMV**

1. IMCMV Times Square LLC d/b/a Margaritaville Resort Times Square ("Margaritaville") is a resort in Times Square with several amenities including a bar, café, pool, and restaurant.

**RESPONSE:** Admitted.

2. Margaritaville is an equal opportunity employer and takes discrimination and retaliation, and allegations thereof, seriously. Margaritaville maintains policies prohibiting discrimination and retaliation in employment. *See* Excerpts of Margaritaville's Policies and Procedures (attached as Exhibit 1 to the Declaration of Anjanette Cabrera ("Cabrera Decl.")).

**RESPONSE:** Disputed that Margaritaville is an equal opportunity employer that takes discrimination and retaliation, and allegations thereof, seriously. Specifically, when Plaintiff complained about discrimination to Mr. Pereira, the Director of Employee and Labor Relations, which Mr. Pereira admitted, on September 3, 2021 (Exh. 20, Pereira Dep. 79: 16-18), Margaritaville conducted zero investigation; Margaritaville conducted investigation only after Plaintiff filed this instant lawsuit on April 14, 2022. Exh. E, D's Resp. to Interr. No. 19.

1

It is further admitted that Margaritaville maintains only some policies prohibiting discrimination. Specifically, Margaritaville's ADA policy discusses only discrimination, and mentions nothing about its policy on retaliation or a hostile work environment. Exh. F, D's Resp. to Doc. Demands 000116-000117. During his deposition, Mr. Pereira, the Director of Employee and Labor Relations, and General Counsel, testified that he is not aware if Margaritaville is planning to amend its policy on disability discrimination in the nearest future, considering ADA policy does not include policy under NYSHRL and NYCHRL. Exh. 20, Pereira Dep. 73: 8-13.

3. Margaritaville has a comprehensive Code of Conduct policy that prohibits employees from refusing to follow instructions, directions or orders from a Supervisor or Manager, as well as engaging in improper or inappropriate conduct. An employee's violation of this policy may result in disciplinary action up to termination. *See* Excerpts of Margaritaville's Policies and Procedures (attached as Exhibit 1 to the Cabrera Decl.) (IMCMV153-154).

**RESPONSE:** Admitted that Margaritaville has only some sort of a policy, but disputed that such policy is comprehensive. Specifically, when Plaintiff allegedly placed raw meat with ready-to-eat product, which, according to Ms. Cohee, the Executive Chef ("Chef Cohee"), was "very severe", Plaintiff was not terminated, until after he complained about discrimination. Exh. 19, Cohee's Dep. 34: 2-10. Plaintiff was not even issued a write-up with regard to that alleged incident. Exh. 19, Cohee's Dep. 31: 15-18. Plaintiff was also not reprimanded for the alleged second incident regarding techniques on sauté stations, which allegedly occurred a week later. Exh. 19, Cohee's Dep. 37: 4-7. Based on foregoing, it cannot be said that Margaritaville's policy was comprehensive: it had obvious flaws and certain exceptions.

**Background on Plaintiff's Employment with IMCMV**

4. On May 31, 2021, Margaritaville hired Abdelhafiz Nofal ("Nofal") as a Line Cook for the resort's restaurant earning $18 per hour. *See* New Hire Paperwork (attached as Exhibit 2 to Cabrera Decl.).

**RESPONSE:** Disputed that Plaintiff was hired as a Line Cook. Plaintiff applied for the position of a Tournant at Margaritaville. Exh. 4, P's Dep. 31: 12-13. A Tournant works at various stations *e.g.* grill, sauté, broiler, breakfast. Exh. 4, P's Dep. 31: 21-25. A line cook, on the other hand, works only on one station. Exh. 4, P's Dep. 41: 20-23. When Plaintiff was hired, he was told that his job title would be Sous Chef or Tournant. Exh. 4, P's Dep. 46: 18-21. It is further admitted that Plaintiff was paid $18.00 per hour.

5. Margaritaville did not have its grand opening until June 25, 2021. See Deposition Transcript of Natalie Haig-Cohee ("Haig-Cohee Dep.") at 13:6-9; 33:13-16 (attached as Exhibit 19 to the Cabrera Decl.). At this time, Margaritaville did formally open its restaurant and all employees were in training. See Haig-Cohee Dep. at 44:19-25 (attached as Exhibit 19 to the Cabrera Decl.); and Deposition Transcript of Hector Pereira ("Pereira Dep.") at 34:6-11 (attached as Exhibit 20 to the Cabrera Decl.).

**RESPONSE:** Admitted - at the time of his hire, Plaintiff was told to work on the grill or sauté, and when the restaurant opened, he was promised a full time job. Exh. 4, P's Dep. 33: 21-25.

6. Although Nofal expressed interest [sic] in working the breakfast shift, he was hired to work as a Line Cook at Margaritaville. *See* Nofal Resume (attached as Exhibit 3 to Cabrera Decl.) (handwritten notation that Nofal "prefer[s] AM" and "breakfast" shift).

**RESPONSE:** Admitted that Plaintiff expressed interest in working the breakfast shift, but full time. Exh. 4, P's Dep. 33: 13-14. Disputed that Plaintiff was hired as a Line Cook. Plaintiff applied for the position of a Tournant at Margaritaville. Exh. 4, P's Dep. 31: 12-13. A Tournant works at various stations *e.g.* grill, sauté, broiler, breakfast. Exh. 4, P's Dep. 31: 21-25. A line cook, on the other hand, works only on one station. Exh. 4, P's Dep. 41: 20-23. When Plaintiff was hired, he was told that his job title would be Sous Chef or Tournant. Exh. 4, P's Dep. 46: 18-21.

7. Nofal was given a copy of Margaritaville's Policies and Procedures, including its Code of Conduct and Harassment Free Workplace policies, and acknowledged receipt of same on or about May 20, 2021. *See* Nofal's Handbook Acknowledgement (attached as Exhibit 6 to the Cabrera Decl.).

**RESPONSE:** Disputed (Q. Is it your testimony here today that you did not put your name on this [employee handbook]? A. I didn't, no. Q. When you were hired, did you go on the internet to fill out forms at all? A. No. Q. Did you go on a computer at Margaritaville? A. I'm very, very bad on computer, very bad. So, if I told you yes, I would be lying to you. I'm very bad on a computer").

8. Margaritaville did not inquire into Nofal's religion during his interview or when he started employment. In fact, Nofal's religion had no impact on how he performed his job duties as a Line Cook. *See* Deposition Transcript of Abdelhafiz Nofal ("Nofal Dep.") at 63:22-64:13 (attached as Exhibit 4 to the Cabrera Decl.) (Q: When you were being interviewed for the job at Margaritaville, did anyone ask you about your religion? A: No.; Q: When you first started working for Margaritaville, did anyone ask you then about your religion? A: No.; Q: Does being – did being Muslim have any impact on how you performed your job at Margaritaville? A: No.).

**RESPONSE:** Admitted - Chef Cohee did not learn of Nofal's religion until in or around September 6, 2021. Exh. 19, Cohee's Dep. 54: 23-25.

9. When Nofal began employment with Margaritaville, the breakfast shift was not open yet, so he was working on food preparation and other tasks required of a Line Cook. *See* Nofal Dep. at 34:3-5; 36:25-37:1-14. (attached as Exhibit 4 to Cabrera Decl.).

**RESPONSE:** Disputed. The cited by the Defendant evidence only establishes that breakfast was not open at that time (Exh. 4, P's Dep. at 34:3-5) due to the pandemic (Exh. 4, P's Dep. 36:25-37:1-14).

3

10. At this time, all employees were given the maximum amount of hours they could work due for training, orientation, and to set up the restaurant for opening. See Haig-Cohee Dep. at 43:12-19 (attached as Exhibit 19 to the Cabrera Decl.).

**RESPONSE:** Disputed. Plaintiff was told that he would be working 40 hours (or more) regardless whether it was breakfast or not. Exh. 4, P's Dep. 39: 10-12; 20-24.

11. As a Line Cook, Nofal was responsible for the preparation and/or cooking of food by following Margaritaville's specifications, including setting up line stations; ensuring that all foods are prepared according to established recipes and plating guidelines; maintaining a clean appearance and work station and assisting in kitchen cleanliness; maintaining safety standards; cross-training on all line, prep, and dish stations; and performing other duties and tasks as assigned or determined by chefs, management, or supervisors, among other duties. *See* Line Cook Job Description (attached as Exhibit 5 to the Cabrera Decl.); and Nofal Dep. at 47:1-48:14; 49:21-57:16 (attached as Exhibit 4 to the Cabrera Decl.) (Nofal admitting that the foregoing were his job duties as the Line Cook).

**RESPONSE:** Disputed that Plaintiff was employed as a Line Cook. Plaintiff applied for the position of a Tournant at Margaritaville. Exh. 4, P's Dep. 31: 12-13. A Tournant works at various stations *e.g.* grill, sauté, broiler, breakfast. Exh. 4, P's Dep. 31: 21-25. A line cook, on the other hand, works only on one station. Exh. 4, P's Dep. 41: 20-23. When Plaintiff was hired, he was told that his job title would be Sous Chef or Tournant. Exh. 4, P's Dep. 46: 18-21. It is further admitted that Plaintiff performed some of the duties listed on the job description for a Line Cook.

12. Nofal reported to Natalie Haig-Cohee (Executive Chef) and Adam Nolan-Charles (Executive Sous Chef). He was also supervised by Jose Dominguez (Assistant Kitchen Manager) and Claudia Rodriguez (Assistant Kitchen Manager). *See* Organization Chart (attached as Exhibit 7 to the Cabrera Decl.); and Nofal Dep. at 57:17-21 (attached as Exhibit 4 to the Cabrera Decl.) (acknowledging that Natalie Haig-Cohee was Nofal's immediate supervisor).

**RESPONSE:** Admitted.

13. At the outset, Nofal demonstrated performance issues and would refuse to follow his supervisors' directives. *See* Haig-Cohee July 29, 2021 Email (attached as Exhibit 18 to the Cabrera Decl.).

**RESPONSE:** Disputed. Prior to his complaints of discrimination, Plaintiff never received counseling regarding his work performance at Margaritaville. Exh. 4, P's Dep. 76: 13-16. Plaintiff never got a write-up or verbal warning. Exh. 4, P's Dep. 78: 24-25. Plaintiff never had any performance issues. Exh. 4, P's Dep. 82: 9-11.

14. Nofal would tell his supervisor that he "knows what he's doing" but was not following Margaritaville's policies and procedures for food preparation. See Haig-Cohee Dep. at 37:5-13 (attached as Exhibit 19 to the Cabrera Decl.).

**RESPONSE:** Disputed. Nofal never disrespected his supervisor. Exh. 4, P's Dep. 80: 12-14.

15. Based on these issues, Margaritaville began having discussions about terminating Nofal's employment during his probationary period. *See* Haig-Cohee July 29, 2021 Email (attached as Exhibit 18 to the Cabrera Decl.) ("We were in the works of letting him go. . .").

**RESPONSE:** Disputed. The quoted evidence does not reference "performance" or "not following Margaritaville's policies and procedures"; it only refers to some unknown "multiple issues that have been addressed previously with Sherry and Dan"; Even Mr. Pereira, the Director of Employee and Labor Relations, during his deposition was not sure what issues were referred to this email. Exh. 20, Pereira's Dep. 57: 6-8.

**Margaritaville Grants Nofal's Requests for Leave of Absences[1]**

16. On June 21, 2021 Nofal reported to Haig-Cohee that he needed time off on June 23, 2021 for medical reasons. *See* Nofal June 21, 2021 Email (attached as Exhibit 8 to the Cabrera Decl.); and Nofal Dep. at 75:8-10 (attached as Exhibit 4 to the Cabrera Decl.) (Nofal took off June 23, 2021 for medical reasons).

**RESPONSE:** Admitted.

17. Nofal provided a doctor's note from Long Island Jewish Medical Center dated June 23, 2021 stating that he "underwent a procedure" and "will not return to work until 6/25/21." *See* June 23, 2021 Doctor's Note (attached as Exhibit 9 to the Cabrera Decl.).

**RESPONSE:** Admitted.

18. Margaritaville granted Nofal's request without issue. *See* Nofal Dep. at 66:8-12; 75:8-13 (attached as Exhibit 4 to the Cabrera Decl.) (Nofal admitted that Margaritaville granted his time off request).

**RESPONSE:** Admitted.

19. On July 5, 2021, Nofal informed Haig-Cohee that he needed time off for a doctor's appointment on July 8, 2021 and Margaritaville again granted Nofal's request. *See* Nofal June 5, 2021 Email (attached as Exhibit 10 to the Cabrera Decl.).

**RESPONSE:** Admitted.

20. On or about July 26, 2021, Nofal provided Haig-Cohee a doctor's note from Northwell Health dated July 26, 2021. The doctor's note did not provide any information about Nofal's

---

[1] Failure-to-accommodate claim (by granting Plaintiff his request for a short-term disability leave) is not alleged in this lawsuit. Plaintiff only alleges that following his return from his short-term disability leave, he suffered an adverse employment action (cut hours and disparate treatment), was subjected to discriminatory comments targeting his religion, and terminated in retaliation for complaining about discrimination.

5

medical condition, but stated that Nofal would be out of work until August 26, 2021. *See* July 26, 2021 Doctor's Note (attached as Exhibit 11 to the Cabrera Decl.).

**RESPONSE:** Admitted that Nofal provided a doctor's note. Disputed that the note did not provide any information about Nofal's medical condition. It referenced a "follow-up evaluation" regarding Nofal's condition known to the Defendant from his previous doctor's note. Exh. 11 of Cabrera Decl.

21. Margaritaville granted his request for extended leave from July 26, 2021 to August 26, 2021. Nofal returned to work on August 26, 2021. *See* Nofal Dep. at 68:10-11; 69:19 (attached as Exhibit 4 to the Cabrera Decl.) (Nofal conceding that Margaritaville granted his request for leave and that he was out until August 26, 2021); *see also* Nofal August 16-19, 2021 Emails (attached as Exhibit 17 to the Cabrera Decl.) (Nofal thanking Haig-Cohee for the time off and putting him back on the schedule on August 26, 2021).

**RESPONSE:** Admitted.

22. Aside from requesting a leave of absence, Nofal never requested any workplace accommodations to perform his job duties and his doctor did not impose any physical restrictions. *See* Nofal Dep. at 87:25-88:4; 88:17-23 (attached as Exhibit 4 to the Cabrera Decl.) (Q: So, when you returned to work, did your doctors give you a note saying that you couldn't be on your toe or you had to be on your toe for less time? A: No, no. They said you can. . . Q: When you returned to work on August 26th . . . did your doctor give you a note that you had any restrictions when you returned to work? A: He didn't give me restriction. . . .).

**RESPONSE:** Disputed. Plaintiff's doctor said to Plaintiff "Make sure don't stand too long, make sure don't run there, do stairs", which he told Chef Cohee about. Exh. 4, P's Dep. 89: 3-9.

**Nofal's Return to Work**

23. In August 2021, while Nofal was on leave, Margaritaville officially opened for breakfast, but it was only set for three days per week. See Haig-Cohee Dep. at 38:12-16; 46:4-12 (attached as Exhibit 19 to the Cabrera Decl.).

**RESPONSE:** Admitted.

24. Upon returning to work, Nofal was instructed that he would be preparing breakfast since that was what he had requested and those shifts were finally available. See Nofal Dep. at 137:2-24 (attached as Exhibit 4 to the Cabrera Decl.).

**RESPONSE:** Admitted that Nofal was told that breakfast shift was the only shift available for him. Disputed that this is what Plaintiff had requested. Plaintiff had previously expressed interest in working the breakfast shift, *full time*. Exh. 4, P's Dep. 33: 13-14. (Q. I tell her, "Boss, you give me three days, I was working five days, that's not nice." She said, "I know what, that's all

that I have. If you don't like it, you can go" Exh. 4, P's Dep. 86: 6-11). Plaintiff applied for the position of a Tournant at Margaritaville. Exh. 4, P's Dep. 31: 12-13. A Tournant works at various stations *e.g.* grill, sauté, broiler and breakfast. Exh. 4, P's Dep. 31: 21-25.

25. However, Nofal asked Haig-Cohee to be scheduled for more hours. See Nofal Dep. at 86:18-24 (attached as Exhibit 4 to the Cabrera Decl.).

**RESPONSE:** Disputed - Plaintiff did not ask to be scheduled more hours than he had previously worked, only that he should be scheduled to work the same amount of hours he worked prior to taking his short-term disability leave. (Q. I tell her, "Boss, you give me three days, I was working five days, that's not nice." She said, "I know what, that's all that I have. If you don't like it, you can go" Exh. 4, P's Dep. 86: 6-11).

26. On September 3, 2021, Haig-Cohee, Nofal and Hector Pereira (Director of Employee and Labor Relations) had a conference call regarding Nofal's request for more hours. Nofal stated that "his hours were reduced from when [sic] before he took the leave compared to at this moment when he was working." See Deposition Transcript of Hector Pereira ("Pereira Dep.") at 37:23-38:1 (attached as Exhibit 20 to the Cabrera Decl.).

**RESPONSE:** Admitted.

27. Nofal claimed he felt "discriminated because he took a leave." See Pereira Dep. at 39:21-25 (attached as Exhibit 20 to the Cabrera Decl.).

**RESPONSE:** Admitted.

28. Pereira spoke with Nofal about his concerns to determine whether they were valid and how Margaritaville could best address those issues. See Pereira Dep. at 43:12-44:1 (attached as Exhibit 20 to the Cabrera Decl.) ("I had asked him do you feel discriminated? He said yes. I asked, do you feel harassed? He said no. I asked do you feel retaliated? He said no. So I went to the yes and asked him to tell me if he felt discriminated asked I asked him category by category, do you feel discriminated because of your age? He said no. Do you feel discriminated because of disability? No. Do you feel discriminated because of sexual orientation? No. Do you feel discriminated because you're a parent? He said no. Do you feel discriminated because of religion? He said no. Do you feel discriminated because of your origin? He said no. Do you feel discriminated because of your sex or sexual orientation? He said no.").

**RESPONSE:** Admitted that Nofal expressed to Mr. Pereira that he felt like being discriminated against. Disputed that Mr. Pereira asked Nofal category-by-category (including disability or religion) whether he felt discriminated against. Mr. Pereira notes indicate only that Plaintiff complained about discrimination. Exh. F, D's Resp. to Doc. 000203-000205.

7

29. Pereira offered to provide Nofal with more shifts for lunch or dinner so he could have more hours, but Nofal said he was only a breakfast cook and only wanted the morning shift. See Deposition Transcript of Hector Pereira ("Pereira Dep.") at 37:11-15; 47:2-8 (attached as Exhibit 20 to the Cabrera Decl.).

**RESPONSE:** Disputed. Plaintiff accepted the job because he was told that he would be working 40 hours, or more, *regardless* whether it was breakfast or not. Exh. 4, P's Dep. 39: 10-12; 20-24.

30. Nofal worked all of the breakfast shifts that were available at the time. See Haig-Cohee Dep. at 103:2-6 (attached as Exhibit 19 to the Cabrera Decl.).

**RESPONSE:** Admitted.

31. During the relevant time period, Margaritaville continued to only have three days of breakfast per week. See Haig-Cohee Dep. at 38:12-16; 46:4-12 (attached as Exhibit 19 to the Cabrera Decl.).

**RESPONSE:** Admitted.

**Nofal's Ongoing Performance Issues**

32. Nofal continued to exhibit conduct and performances issues upon his return. *See* Natalie Haig Cohee Written Statement (attached as Exhibit 12 to the Cabrera Decl.).

**RESPONSE:** Disputed. Plaintiff never received counseling regarding his work performance at Margaritaville. Exh. 4, P's Dep. 76: 13-16. Plaintiff never got a write-up or verbal warning. Exh. 4, P's Dep. 78: 24-25. Plaintiff never had any performance issues. Exh. 4, P's Dep. 82: 9-11.

33. Specifically, on September 6, 2021, Haig-Cohee requested that Nofal perform certain tasks and each time he became very combative and argumentative with her. *See* Natalie Haig-Cohee Written Statement (attached as Exhibit 12 to the Cabrera Decl.); and Nofal Dep. at 77:8-16 (attached as Exhibit 4 to the Cabrera Decl.) (Nofal admitting that Haig-Cohee instructed him how to perform his job on several occasions).

**RESPONSE:** Disputed - Defendant misquotes Plaintiff's testimony (Q. Did Natalie have to discuss with you on several occasion how she wanted you to do things? A. She did it - like I just did it now, *only one time*. "Abdel I need this to be like that, this way" I said "Okay" Exh. 4, P's Dep. 77: 8-16).

34. Nofal told Haig-Cohee that "if he was the boss, he would fire [her]." *See* Natalie Haig-Cohee Written Statement (attached as Exhibit 12 to the Cabrera Decl.).

**RESPONSE:** Disputed. Nofal never disrespected his supervisor. Exh. 4, P's Dep. 80: 12-14.

35. Haig-Cohee instructed Nofal to bump the order screen seven different times, but Nofal refused each time. *See* Natalie Haig-Cohee Written Statement (attached as Exhibit 12 to the Cabrera Decl.).

**RESPONSE:** Disputed. Natalie Cohee never asked Plaintiff to bump the screen. Exh. 4, P's Dep. 79: 9-11.

36. Haig-Cohee instructed Nofal to cook sausage on a flat top grill and showed him how to do it. He refused and said "he knows what he is doing." *See* Natalie Haig-Cohee Written Statement (attached as Exhibit 12 to the Cabrera Decl.); and Nofal Dep. at 93:2-25; 127:2-15 (attached as Exhibit 4 to the Cabrera Decl.) (Nofal admitting that he would question Haig-Cohee's cooking instructions by suggesting alternatives that were not in accordance with Margaritaville's guidelines).

**RESPONSE:** Disputed. Nofal never ignored Chef Cohee's instructions on how to cook sausage on the flattop. Exh. 4, P's Dep. 79: 12-17. Plaintiff did not "question" Chef Cohee's cooking instructions, but only made a suggestion pursuant to Margaritaville's 'open door' policy. Exh. 4, P's Dep. 93: 16-17.

37. Haig-Cohee instructed Nofal to start cooking all the hot items like bacon, sausage, and potatoes. He said he will get to it. She said he needs to start cooking now. He responded by saying, "You can't make me do that, set the line up and go downstairs all by myself." She explained that he had 1.5 hours to set up the line and he needed to make sure it was done. He continued to argue with her and had the audacity to tell her that "if he was the chef, [she] would not have a job." *See* Natalie Haig-Cohee Written Statement (attached as Exhibit 12 to the Cabrera Decl.).

**RESPONSE:** Disputed. Nofal never disrespected his supervisor. Exh. 4, P's Dep. 80: 12-14. It is further admitted that Plaintiff protested against Chef Cohee's singling him out by treating him differently than other workers, by requiring him to sweep the floor, run back and forth to the storage room, always yelling at him. Exh. D, P's Resp. to Doc. Demands 0003;0036. Other people were not asked to do half of the things Nofal was told to do. Exh. D, P's Resp. to Doc. Demands 0006.

38. Haig-Cohee instructed Nofal to make hash browns by putting more potatoes on the flat top grill to cook. She noticed that he was adding way too much and so told him not to add so many potatoes. She had to tell him five times before he listened. *See* Natalie Haig-Cohee Written Statement (attached as Exhibit 12 to the Cabrera Decl.).

**RESPONSE:** Disputed. Nofal never ignored Chef Cohee's instructions. Exh. 4, P's Dep. 79: 12-17. Nofal never disrespected his supervisor. Exh. 4, P's Dep. 80: 12-14. Plaintiff did not question Chef Cohee's cooking instructions, but only made a suggestion pursuant to Margaritaville's 'open door' policy. Exh. 4, P's Dep. 93: 16-17.

39. Nofal's argumentative, combative, and insubordinate behavior towards Haig-Cohee was corroborated by written witness statements from Robert Taylor (Security), Chris Casciello (Assistant General Manager), and Michael Roberts (General Manager). *See* Robert Taylor's

Witness Statement (attached as Exhibit 13 to the Cabrera Decl.); Chris Casciello's Written Statement (attached as Exhibit 14 to the Cabrera Decl.); and Michael Roberts' Written Statement (attached as Exhibit 15 to the Cabrera Decl.).

**RESPONSE:** Disputed that Nofal engaged in argumentative, combative, and insubordinate behavior towards Chef Cohee. Nofal never ignored Chef Cohee's instructions. Exh. 4, P's Dep. 79: 12-17. Nofal never disrespected his supervisor. Exh. 4, P's Dep. 80: 12-14. It is further admitted that Chef Cohee and Mr. Pereira collected statements from Margaritaville employees to support their pre-textual grounds for Plaintiff's termination (Q. And based on those statements you would make a conclusion that his performance was not satisfactory, correct? A. Correct. Q. You wouldn't have your own independent knowledge, observation of Mr. Nofal's performance to state whether his performance was satisfactory or not? A. …no. Exh. 20, Pereira Dep. 27: 8-17).

40. Specifically, Taylor overheard and reported that Nofal told Haig-Cohee that "if he was the boss he would have fired her." Nofal refused to follow Haig-Cohee's instructions. *See* Robert Taylor Written Statement (attached as Exhibit 13 to the Cabrera Decl.).

**RESPONSE:** Disputed. Nofal never ignored Chef Cohee's instructions. Exh. 4, P's Dep. 79: 12-17. Nofal never disrespected his supervisor. Exh. 4, P's Dep. 80: 12-14.

41. Casciello corroborated that Nofal refused to meet with Haig-Cohee to discuss his conduct and instead left for the day in violation of Margaritaville's policies and procedures. *See* Chris Casciello's Written Statement (attached as Exhibit 14 to the Cabrera Decl.).

**RESPONSE:** Disputed. Nofal complied with Margaritaville's policies and procedures by leaving work after completing 8 hours of his shift. Exh. F, D's Resp. to Doc. 000097.

42. Roberts confirmed that Nofal refused to follow Haig-Cohee's directives and "ignored her." When Cohee asked to speak with Nofal about his insubordination, Nofal "clocked out and left for the day." *See* Michael Roberts' Written Statement (attached as Exhibit 15 to the Cabrera Decl.).

**RESPONSE:** Disputed. Nofal complied with Margaritaville's policies and procedures by leaving work after completing 8 hours of his shift. Exh. F, D's Resp. to Doc. 000097.

43. As a result of Nofal's insubordination, Margaritaville terminated Nofal on September 10, 2021 for performance and for violation of company policies, including insubordination. *See* Termination Notice (attached as Exhibit 16 to the Cabrera Decl.).

**RESPONSE:** Disputed. Plaintiff was terminated only seven days following his complaints of discrimination on the pre-textual grounds of performance and violation of company policy. Exh. F. D's Resp. to Doc. 00203-00205.

44. Nofal was asked to sign a Personnel Action Form, which he refused to do. *See* Termination Notice (attached as Exhibit 16 to the Cabrera Decl.); and Nofal Dep. at 84:8-11 (attached as Exhibit 4 to the Cabrera Decl.) ("I told her, 'I'm not going to sign anything.'").

**RESPONSE:** Disputed. Plaintiff did not know what he was about to sign. During his termination Plaintiff was told to sign a document without providing him a copy or an opportunity to speak. Exh. D, P's Resp. to Doc. Demands 0012.

**Nofal's Allegations Against Haig-Cohee**

45. Nofal claims that Haig-Cohee suggested that he taste pork while cooking bacon. *See* Nofal Dep. at 94:7-23 (attached as Exhibit 4 to the Cabrera Decl.) (According to Nofal, Haig-Cohee said, "I know you don't like the bacon. You don't like pork. You Musli[m], right?" Nofal responded, "Yes, I am, ma'am, I am." Haig-Cohee said, "I know you don't eat pork, but you want to know something, when you want to cook something, you have to taste it before you – after you cook it, you got to taste everything." Nofal responded, "Yeah, I don't eat it, but I cook it. I cook the bacon, I don't say no." Haig-Cohee said, "Yeah, but you have to test it too." Nofal responded, "No, I don't eat it.").

**RESPONSE:** Admitted.

46. Nofal further alleges that Haig-Cohee would instruct all of the line cooks, including Nofal, to "Move, move, move" when they were on the line, and to "Go get me this, go get me that," causing Nofal to have to "run downstairs to get it." *See* Nofal Dep. at 100:6-19 (attached as Exhibit 4 to the Cabrera Decl.).

**RESPONSE:** Disputed. Defendant misquotes Plaintiff's testimony: Q. And who was the other person that you're saying wasn't treated that way? A. …All the line cooks, all the people work on the line with me, she never tell someone move, fast. She never also tell someone, "Go get this, go get me that" Exh. 4, P's Dep. 100: 13-19.

47. When Haig-Cohee would get mad at employees, she would say the "F word." *See* Nofal Dep. at 113:5-114:10 (attached as Exhibit 4 to the Cabrera Decl.).

**RESPONSE:** Disputed. Chef Cohee used "F word" specifically as to Plaintiff, when she demanded him to "Move", which he could not do due to his disability. Exh. 4, P's Dep. 114: 2-3; 113: 5-18.

48. Nofal does not make any other allegations regarding Haig-Cohee that are tied to his religion or disability. *See* Nofal Dep. at 137:25-138:10 (attached as Exhibit 4 to the Cabrera Decl.) (Q: Have you told us everything that [Cohee] said or did to you that you believe was because of your religion and because of your disability? A: Yes. Q: My question is, have you told us everything? Is there anything else that happened that you didn't share today? A: No, I share everything with you, yes. I did tell you everything.).

**RESPONSE:** Admitted - Nofal does not make any other allegations regarding Chef Cohee, other than: cutting Plaintiff's hours upon his return from his short-term disability leave (Exh. 4, P's Dep. 86: 6-11); making discriminatory comments (Exh. D, P's Resp. to Doc. 00011-00012); treating Plaintiff less favorably, than similarly situated to him employees (Exh. D, P's Resp. to

Doc. Demands 0003;0036.); telling Plaintiff "if you don't like it, you can go" when he complained about discrimination (Exh. 4, P's Dep. 86: 6-11); and terminating Plaintiff on pre-textual grounds only seven days after he complained about discrimination (Exh. F, D's Resp. to Doc. 00203-00205).

**PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS**

49. Plaintiff was the only Muslim in the group. Exh. 4, P's Dep. 95: 16-17.

50. Chef Cohee is White, American. Exh. 19, Cohee's Dep. 54: 5-8.

51. Chef Cohee had supervisory authority over Nofal. Exh. 19, Cohee's Dep. 31: 21-25. D's Answer ¶ 19. She was the only one who determined Nofal's work schedule. Exh. 19, Cohee's Dep. 32: 19-21.

52. Mr. Pereira serves as the general counsel of IMCMV Holdings, Inc. Exh. 20, Pereira Dep. 14: 3-6. He also serves as the Director of Employee and Labor Relations at Margartiville. Exh. 20, Pereira Dep. 14: 18-20. He also oversees HR functions at the Times Square location. Exh. E, D's Resp. to Interr. No. 13.

**Disability Discrimination**

53. Plaintiff notified Ms. Featherby (Food and Beverage) and Chef Cohee about his diabetes. Exh. 4, P's Dep. 118: 8-12. Plaintiff notified them verbally, and showed them a picture of his injured toe. Ext. 4, P's Dep. 118: 19-25. Exh. D, P's Resp. to Doc. Demands 0038.

54. Although Plaintiff had "no problem" with working, he had an infection in his toe, and was limping. Exh. 4, P's Dep. 64: 20-25.

55. As Plaintiff was working on the line, 30 feet long, he was limping, was not fast enough; Chef Cohee yelled, "Move", "Move" Exh. 4, P's Dep. 31: 10-25. Chef Cohee did not yell at other line cooks in the similar manner. Exh. 4, P's Dep. 100: 13-19.

56. When Plaintiff came back from his disability leave, Chef Cohee changed his station, schedule and duty. Exh. 4, P's Dep. 133: 22-25. Before taking his leave, Plaintiff used to work five days, 40 hours per week. He had three hours to set up the line. Exh. 4, P's Dep. 134: 8-14.

57. Following his return from his short-term disability leave, Nofal worked only 20 hours (Exh.19, Cohee's Dep. 74: 11-14), while Margaritaville hired approximately 100 new employees. Exh. 19, Cohee's Dep. 85: 11-13. When Plaintiff came back from his short-term disability leave, Chef Cohee replaced him with individuals who were hired after Plaintiff. Exh. D, P's Resp. to Doc. Demands 0003. Exh. F, D's Resp. to Doc. Demands 0079; 0081.

58. Christopher, Manuel and Marcelo were similarly situated to Plaintiff employees. Exh. 19, Cohee's Dep. 71: 4-9. But none of them was scheduled to work as little hours as Nofal for the period of August 30, 2021 to September 5, 2021, following his short term disability leave. Exh. 19, Cohee's Dep. 76: 21-25. They were working more days and hours than Nofal. Exh. 19, Cohee's Dep. 76: 16-19.

59. While Plaintiff's hours were cut, other employees' hours *e.g.* Bianca, Carla, Carolina, Chistopher, Erica, Jasmine, Joseph, Kaith, Kerel, Khadilah, Laveli were not cut. Exh. E, D's Resp. to Interr. No. 1.

60. Prior to taking his disability leave, Plaintiff had three hours to prep, while after his short-term disability leave, he was given only 45 minutes to prep. Exh. 4, P's Dep. 87: 5-11.

61. Chef Cohee treated Nofal differently than other workers, by requiring him to sweep the floor, run back and forth to the storage room, always yelling at him. Exh. F, P's Resp. to Doc. Demands 0003;0036. Other people were not asked to do half of the things Nofal was told to do. Exh. F, P's Resp. to Doc. Demands 0006.

62. Nofal was the only employee, whose 90-day probation period was to re-start following his short-term disability leave. Exh. 19, Cohee's Dep. 65: 16-20.

63. Mr. Pereira had Nofal re-start his 90-day probation period, even though he was supposed to add the 30 days that he was off. Exh. 20, Pereira Dep. 34: 16-23. Nofal had to re-start his 90-day probation period, because he was on a leave. Exh. 20, Pereira Dep. 75: 10-12.

64. There is no written policy at Margaritaville saying that employee must restart his 90-day probation period following his short-term disability leave. Exh. 20, Pereira Dep. 28: 22-24.

**Religious Discrimination**

65. Chef Cohee told Nofal to try bacon, knowing he does not eat bacon due to his religion; when he complained, Chef Cohee responded, "you don't like it - go home!" Exh. D, P's Resp. to Doc. Demands 0011.

**Plaintiff's Complaints of Discrimination**

66. On September 3, 2021, Mr. Pereira took contemporaneous notes of conversation between him, Chef Cohee and Nofal. Exh. 20, Pereira Dep. 41: 11-16.

67. Plaintiff complained that he felt discriminated against because he took his leave. Exh. 20, Pereira Dep. 39: 21-25. Nofal used the word "discrimination" when complaining to Pereira. Exh. 20, Pereira Dep. 79: 16-18.

68. During said conversation, Mr. Pereira asked Nofal, "Do you feel discriminated?" "[Plaintiff] said yes" Exh. 20, Pereira Dep. 43: 12-13. In response, Mr. Pereira told Nofal that the way Nofal described the information looks more like a retaliation. Exh. 20, Pereira Dep. 45: 14-17.

**Lack of Corrective and Preventative Resources**

69. Chef Cohee believes that the first step in the grievance process at Margaritaville is to have verbal one-on-one, but she does not know if its actually a policy. Exh. 19, Cohee's Dep. 36: 11-14.

70. Chef Cohee is not aware if Margaritaville's policy under ADA has more than two pages. Exh. 19, Cohee's Dep. 66: 20-21.

71. There is an employee handbook, but it is used only used in Las Vegas. Exh. 20, Pereira Dep. 24: 2-3.

72. Margaritaville's policy on disability discrimination is only nine paragraphs that takes one and half pages. Exh. 20, Pereira Dep. 71: 10-13. It is substantially smaller, than any other of Margaritaville's policies. Exh. 20, Pereira Dep. 71: 14-18.

73. Margaritaville has policy under ADA, but no policy under its counterparts, NYSHRL or NYCHRL. Mr. Pereira is not aware if Margaritaville is planning to amend its policy on disability discrimination in the nearest future. Exh. 20, Pereira Dep. 73: 8-13.

74. The acknowledgment Nofal allegedly signed on May 20, 2021, does not include any policy designed to prevent discrimination under NYSHRL or NYCHRL. Exh. F, D's Resp. to Doc. Demands 000114.

75. Margaritaville' policy on ADA is designated as "new hire information" Exh. F, D's Resp. to Doc. Demands 000116-000117. Policy discusses only discrimination, and mentions nothing about Margaritaville attempts to prevent retaliation or a hostile work environment. Exh. F, D's Resp. to Doc. Demands 000116-000117.

76. Plaintiff was never appraised of the results of the investigation by Margaritaville (if any), even though he was entitled to be provided with a response. Exh. F, D's Resp. to Doc. Demands 000155. In fact, Margaritaville never conducted investigation into Plaintiff's complaints about discrimination, until the instant litigation commenced in April 2022. Exh. E, D's Resp. to Interr. No. 19.

77. Plaintiff was terminated only seven days (7) after lodging his complaint of discrimination to Chef Cohee and Mr. Pereira. Exh. F, D's Resp. to Doc. Demands 000203-000205.

Dated: May 17, 2023
      New York, New York

Respectfully submitted,

Akin Law Group PLLC

*/s/ Olena Tatura*

_____

Olena Tatura, Esq.
45 Broadway, Suite 1420
New York, New York 10006
(212) 825-1400

*Counsel for Plaintiff*