UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ABDELHAFIZ M. NOFAL,                                    Case No.: 22-CV-03104-MKV

                                    Plaintiff,

                -against-


IMCMV TIMES SQUARE LLC d/b/a
MARGARITAVILLE RESORT TIMES SQUARE,

                                    Defendant.
-------------------------------------------------------------------X


_____

**MEMORANDUM OF LAW IN OPPOSITION TO
THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
_____


AKIN LAW GROUP PLLC
Attorneys for Plaintiff
45 Broadway, Suite 1420
New York, New York 10006
(212) 825-1400

**Table of Contents**

**Page**

Preliminary Statement…………………………………………………………………....1

Statement of Facts …………………………………………………………………....6

Argument………………………………………………………………………………9

    I.    Margaritaville Failed To Establish As The Matter Of Law Its Defense
        To Plaintiff's Claims Of Disability- And Religion-Based Discrimination……………10

    II.    Requiring Plaintiff, Who Is A Muslim Sous Chef, To Try Bacon To Do His Job, And
        Demanding Him To Move Fast Despite Seeing He Was Limping - Was Severe And
        Pervasive Enough To Interfere With The Terms And Conditions Of Plaintiff's
        Employment With Margaritaville ……………………………………………………15

    III.    The Defendant Failed To Establish As The Matter Of Law That Plaintiff's Termination
        Only Seven Days Following His Complaints Of Discrimination Was Based On A
        Legitimate Non-Discriminatory Reason………………………………………………18

Conclusion…………………………………………………………………………..……19

**Statutes**                                                             **Page(s)**

Rule 56 of FRCP ................................................................................................*passim*

**Cases**

*Chertkova v. Conn. Life Ins.*,
    92 F.3d 81, 90 (2d Cir. 1996)……………………………………………...……18,19

*Gorman-Bakos v. Cornell Coop. Extension*,
    252 F.3d 545, 554 (2d Cir. 2001)……………………………………………...18,19

*Rasmy v. Marriott Int'l Inc.*,
    952 F.3d 379, 392 (2nd Cir. 2020)…………………………………………………19

*Bickerstaff v. Vassar Coll.*,
    196 F.3d 435, 448 (2d Cir. 1999).................................................................10

*Cityspec, Inc. v. Smith*,
    617 F.Supp.2d 161, 168 (E.D.N.Y. 2009…………………………………………9

*DeJesus v. Starr Technical Risks Agency, Inc.*,
    2004 U.S. Dist. LEXIS 19213 (S.D.N.Y. Sept. 27, 2004)…………..………..…………12

*DeJohn v. Wal-Mart Stores E., LP*,
    2013 U.S. Dist. LEXIS 38399 (N.D.N.Y. Mar. 20, 2013)………………….………………12

*DiCesare v. Town of Stonington*,
    823 Fed. Appx. 19, 24 (2nd Cir. 2020).............................................................20

*Britt v. Merrill Lynch & Co., Inc.*,
    2011 U.S. Dist. LEXIS 96881 (S.D.N.Y. Aug. 26, 2011)………………….……………13

*Francis v. A&E Stores*, Inc.,
    2008 U.S. Dist. LEXIS 83369 (SDNY. October 15, 2009)…………………..……….…9,14

*Graham v. Long Island R.R.*,
    230 F.3d 34, 38 (2d Cir. 2000)........................................................................10

*Goyette v. DCA Advertising*,
    1993 U.S. Dist. LEXIS 10491, *34 (SDNY. 1993)…………………………….…..……14

*Harris v. Forklift Sys.*,
    510 U.S. 17, 21 (1993)………………………………………………………..17

*Hill v. Dale Elecs. Corp.*,
    2004 U.S. Dist. LEXIS 25522 (S.D.N.Y. Dec. 19, 2004)…………………………………13

*Kamiel v. Hai St. Kitchen & Co. LLC*,
    2023 U.S. Dist. LEXIS 42026, *10 (SDNY. March 13, 2023)……………………….……11

*Liberty Media Corp., LMC v. Vivendi Universal*,
    2013 U.S. Dist. LEXIS 19485, *26 (SDNY. February 12, 2013)………………………… 15

*Stryker v. HSBC Sec. (USA)*,
    2020 U.S. Dist. LEXIS 158630, *28 (SDNY. August 21, 2020)………………..……….10

*Uranyi v. Multiplan, Inc.*,
    2006 U.S. Dist. LEXIS 38979, *31 (EDNY. 2006)……………………………...……….11

*Velez v. McHugh*,
    No. 09-CV-0925, 2011 WL 778693, at *2 (S.D.N.Y. 2011)..........................................10

*Mattera v. JPMorgan Chase Corp.*,
    740 F. Supp. 2d 561, 566 n.2 (S.D.N.Y. 2010) ………………………………………….14

*H. Sand & Co. v. Airtemp Corp.*,
    934 F.2d 450, 454-55 (2d Cir. 1991)……………………………………………………14

*Alfano v. Costello*,
    294 F.3d 365, 373 (2d Cir. 2002)……………………………………...…………….16

*Cruz v. Coach Stores, Inc.*,
    202 F.3d 560, 570 (2d Cir. 2000)…………………………………...………………….16

*Muktadir v. Bevacco Inc.*,
    2013 U.S. Dist. LEXIS 113967, *8 (EDNY. August 13, 2013)………………………….16

*Elms v. West Chester Borough*,
    2021 U.S. Dist. LEXIS 208047, *4 (Penn. East. Dis. Ct. October 28, 2021)…….…..….17

*Nash v. Charlotte Mecklenburg Hosp. Auth.*,
    1997 U.S. Dist. LEXIS 9665, *19-20 (North Carolina West. Dist. Ct. May 7, 1997)…...17

*Wanamaker v. Columbian Rope Co.*,
    108 F.3d 462, 465 (2d Cir. 1997)..................................................................................18

Plaintiff Abdelhafiz Nofal ("Nofal" or "Plaintiff") respectfully submits this Memorandum of Law in Opposition to the Motion for Summary Judgment filed by the Defendant IMCMV Times Square LLC d/b/a Margaritaville Resort Times Square ("Margaritaville" or "Defendant"). As demonstrated more fully below, genuine issues of material fact exist which preclude awarding summary judgment to Defendant.

## PRELIMINARY STATEMENT

Plaintiff brought this lawsuit under Title VII, ADA, NYSHRL and NYCHRL to recover the damages he suffered as the result of the Defendant's discrimination against him on the basis of his religion (Islam) and disability (diabetes). The uncontroverted evidence (work schedules) in this case shows that Plaintiff's work hours were cut in half immediately following his return from his short-term disability leave related to his diabetes. Plaintiff was assigned to do materially worse duties, such as cleaning, and was given substantially less time to prepare for the food service, compared to other non-disabled employees. Nofal was the only one who, because of his disability, had to re-start his 90-day probation period. Although Plaintiff was limping due to the injured toe caused by his diabetes, he was told to run up and down the stairs and move fast along the 30ft long cooking station. Plaintiff was also told by his immediate supervisor, Natalie Cohee, that he needs to try bacon in order to do his job, completely ignoring the fact that Plaintiff is Muslim and cannot eat pork pursuant to his religion. When Plaintiff complained about discrimination to Natalie Cohee and HR, Plaintiff was terminated only seven days later in retaliation against him for voicing his concerns. Defendant bases its motion for summary judgment on three facially flawed arguments:

*First*, Margaritaville alleges that there is no inference of discrimination, completely disregarding that temporary proximity, along with other direct and circumstantial evidence in this case, which gives rise to a strong inference of disability- and religion-based discrimination.

*Second*, the Defendant failed to come forward with undisputed evidence in admissible form establishing as the matter of law that Plaintiff's termination only seven days following his complaint of discrimination was motivated by a legitimate and non-discriminatory reason.

*Third*, the Defendant failed to establish as the matter of law its defense to Plaintiff's claim that he was subjected to a hostile work environment based on his disability and religion, which unreasonably interfered with the terms and conditions of his employment with Margaritaville.

Margaritaville's motion for summary judgment should be denied, because Nofal produced evidence supporting reasonable inference that he performed essential job functions, met employer's legitimate expectations, and reasons for his discharge were a result of a pattern of disparate treatment triggered by his disability and religion.

## STATEMENT OF FACTS[1]

In or around June 2021, Plaintiff commenced his employment at Margaritaville as Sous Chef. See ¶¶12-15 of Compl., Nofal Aff. ¶7[2]. Plaintiff accepted the job because he was told that he would be working forty hours, or more, regardless whether it was breakfast or not. PSOF ¶29 (Exh. 4, P's Dep. 39: 10-12; 20-24).

Plaintiff suffers from diabetes. See ¶22 of Compl. Although Plaintiff had "no problem" working, he had an infection in his toe, and was limping. PSOF ¶54 (Exh. 4, P's Dep. 64: 20-25).

---

[1] Nofal also respectfully refers this Court to the factual background as set forth in Plaintiff's Opposition to Defendants' Rule 56.1 Statement of Undisputed Facts, Plaintiff's Supplemental Statement of Disputed Facts, and the Declaration of Olena Tatura, together with the exhibits annexed thereto, including the Affidavit of Plaintiff Abdel Nofal (Ex. G).

[2] Nofal Aff. ¶ ___ refers to the corresponding paragraph in Plaintiff's Affidavit (Ex. G.).

Plaintiff notified Ms. Featherby (in charge of Food and Beverage) and Natalie Cohee, his immediate supervisor, about his diabetes. Exh. 4, P's Dep. 118: 8-12. Plaintiff notified them verbally, and even showed them a picture of his injured toe. Ext. 4, P's Dep. 118: 19-25. PSOF ¶53 (Exh. D, P's Resp. to Doc. Demands 0038).

Prior to taking his short-term disability leave on July 26, 2022, Plaintiff worked forty hours or more. See ¶¶18,26,30 of Compl. However, following Plaintiff's return from his short-term disability leave, Nofal was scheduled by Natalie Cohee to work only twenty hours per week or less SPOF ¶57 (Exh.19, Cohee's Dep. 74: 11-14). Meanwhile, Margaritaville hired approximately 100 new employees. *Id*. (Exh. 19, Cohee's Dep. 85: 11-13).

In addition, following Plaintiff's return from his short-term disability leave, Plaintiff was told by Natalie Cohee that his 90-day probation period would re-commence on August 26, 2021. See ¶28 of Compl. Nofal was the only employee, whose 90-day probation period was to re-start following his short-term disability leave. PSOF ¶62 (Exh. 19, Cohee's Dep. 65: 16-20).

Plaintiff's immediate supervisor, Natalie Cohee, also treated Nofal differently than other workers without disability, by requiring him to sweep the floor, run back and forth to the storage room, while always yelling at him. PSOF ¶61 (Exh. F, P's Resp. to Doc. Demands 0003;0036). Other employees were not asked to do half of the things Nofal was told to do. Exh. F, P's Resp. to Doc. Demands 0006. Natalie Cohee treated Nofal differently, despite being aware that Plaintiff's doctor instructed Plaintiff not to stand too long, not to run or do the stairs because of his disability. PSOF ¶21 (Exh. 4, P's Dep. 89: 3-9). Plaintiff was also given only forty-five minutes to prep for the food service, while prior to taking his short-term disability leave, he had three hours to prep or more. PSOF ¶60 (Exh. 4, P's Dep. 87: 5-11). As Plaintiff was working on the line, 30 feet long, he was limping, was not fast enough; Natalie Cohee yelled, "Move",

"Move" Exh. 4, P's Dep. 31: 10-25. Natalie Cohee did not yell at other line cooks in the similar manner. PSOF ¶55 Exh. 4, P's Dep. 100: 13-19.

On or about September 3, 2021, Plaintiff complained to Natalie Cohee about the Defendant's discriminatory conduct, while recruiting, training and hiring new employees without disability. See ¶¶36-37 of Compl. Natalie Cohee falsely advised Plaintiff that the breakfast shift was the only shift available to him. See ¶36 of Compl. Following Plaintiff's complaints about discrimination, in Plaintiff's presence, Natalie Cohee telephoned HR. See ¶38 of Compl. Mr. Pereira (oversees HR) took contemporaneous notes of conversation between him, Chef Cohee and Nofal. PSOF ¶66 (Exh. 20, Pereira Dep. 41: 11-16). During said conversation, Mr. Pereira asked Nofal, "Do you feel discriminated against?" "[Plaintiff] said yes" Exh. 20, Pereira Dep. 43: 12-13. In response, Mr. Pereira told Nofal that the way Nofal described the information looks more like a retaliation. PSOF ¶66 (Exh. 20, Pereira Dep. 45: 14-17). Mr. Pereira promised to get back to Plaintiff, but never did. Nofal Aff. ¶25.

On or about September 6, 2021, Natalie Cohee told Plaintiff that he should taste bacon to do his job. She knew Plaintiff is Muslim and pursuant to his religion (Islam), he cannot eat pork. See ¶¶41-42 of Compl. Plaintiff was also the only Muslim in the group. PSOF ¶49 (Exh. 4, P's Dep. 95: 16-17). Plaintiff was very offended, and when Plaintiff objected, Natalie Cohee instructed Plaintiff to go home. See ¶46 of Compl.

Prior to his complaints of discrimination, Plaintiff never received counseling regarding his work performance at Margaritaville. Exh. 4, P's Dep. 76: 13-16. Plaintiff never got a write-up or verbal warning. Exh. 4, P's Dep. 78: 24-25. Plaintiff never had any performance issues. PSOF ¶13 (Exh. 4, P's Dep. 82: 9-11).

However, only three days following Plaintiff's complaints of discrimination, Margaritaville, through its agents and employees, rushed to collect statements from its current employees to support and facilitate Plaintiff's termination from Margaritaville in retaliation against him for voicing his concerns about discrimination. Def. Exh. 12-15[3].

On September 10, 2021, only ten days following Plaintiff's complaints about discrimination, Plaintiff was terminated on some unspecified pre-textual grounds. See ¶49 of Compl. During his termination, Plaintiff was told to sign a document, but was refused to see a copy of what he was told to sign. See ¶50 of Compl.

Margaritaville did not conduct any investigation into Plaintiff's complaints of discrimination; the only investigation that was done was only after the instant lawsuit on April 14, 2022. PSOF ¶2 (Exh. E, D's Resp. to Interr. No. 19). Margaritaville's ADA policy mentions nothing about its policy on retaliation or hostile work environment and does not include policy under NYSHRL and NYCHRL addressing disability discrimination. PSOF ¶2 (Exh. 20, Pereira Dep. 73: 8-13.).

## ARGUMENT

Summary judgment is not appropriate unless the evidence in the record demonstrates that "there are no genuine issues as to any material fact." FED.R.CIV.P.56(c). The party moving for summary judgment, drawing all inferences in favor of the non-moving party, has the burden of establishing that there are no genuine issues of material fact. *Cityspec, Inc. v. Smith*, 617 F.Supp.2d 161, 168 (E.D.N.Y. 2009). "The Court should not grant summary judgment if there is

---

[3] In support of its motion, Margaritaville produced a few statements from its current employees, which are inadmissible hearsay, and contain inconsistent timing. *See Francis v. A&E Stores*, Inc., 2008 U.S. Dist. LEXIS 83369, *9, 2008 WL 4619858 (SDNY. October 15, 2009) (discounting declarations of current employees "because of the risk of bias and coercion inherent in that testimony)

'any evidence in the record that could reasonably support a jury's verdict for the non-moving party.'" *Id.*

In employment discrimination cases, it is well-settled that "caution should be exercised in addressing summary judgment motions . . . where intent and state of mind are at issue because 'careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination.'" *Velez v. McHugh*, No. 09-CV-0925, 2011 WL 778693, at *2 (S.D.N.Y. 2011) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000)); see also *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999) ("as discrimination will seldom manifest itself overtly, courts must be alert to the fact that employers are rarely so cooperative as to include a notation in the personnel file that the firing is for a reason expressly forbidden by law") (internal quotation omitted).

As explained in detail below, the direct and circumstantial evidence in this case supports the inference that Plaintiff was discriminated against on the basis of his disability and religion.

## I. Margaritaville Failed to Establish as the Matter of Law Its Defense to Plaintiff's Claims of Disability- and Religion-Based Discrimination

In its motion, the Defendant does not dispute that Plaintiff has a disability, that Plaintiff was able to perform the essential duties of his job or that Plaintiff was terminated. Margaritaville only disputes that Plaintiff's termination did not give rise to an inference of discrimination[4].

It is well-settled, however, that a strong showing of temporal proximity between evidence of a plaintiff's disability and an adverse action can raise an inference of discrimination. *Stryker v. HSBC Sec*. (USA), 2020 U.S. Dist. LEXIS 158630, *28, 2020 WL 5127461 (SDNY. August 21,

---

[4] The Defendant's argument that Plaintiff was "not qualified" for the job *See* Def. SOF page 10, contradicts the Defendant's own position that Plaintiff was able to perform the essential functions of his job Def. SOF page 9. The Defendant cannot have two bites of an apple.

2020). Gaps of two months or less—between disclosure of a disability and an adverse action—as plausibly giving rise to an inference of causation in discrimination cases. *Kamiel v. Hai St. Kitchen & Co. LLC*, 2023 U.S. Dist. LEXIS 42026, *10, 2023 WL 2473333 (SDNY. March 13, 2023).

In this case, Nofal was subjected to an adverse employment action less than two months after he disclosed his disability, and immediately following his return from his short-term disability leave.

Specifically, following Plaintiff's return from his short-term disability leave, his hours were cut from forty to only twenty hours per week, while Margaritaville hired approximately 100 new employees. PSOF ¶57. Similarly situated to Plaintiff employees, Christopher, Manuel and Marcelo, did not have their hours cut by the Defendant. PSOF ¶58.

The Defendant's explanation for this adverse employment action based on Plaintiff's disability is that "Margaritaville was rolling out its breakfast shift three days per week" and Plaintiff was allegedly "unwilling to pick up any additional lunch or dinner shifts" *See* Def. MOL Page 11. The evidence in this case, however, shows otherwise. Nofal wanted to work full time. Exh. 4, P's Dep. 33: 13-14. (Q. I tell her, "Boss, you give me three days, I was working five days, that's not nice." She said, "I know what, that's all that I have. If you don't like it, you can go" Exh. 4, P's Dep. 86: 6-11). *See Uranyi v. Multiplan, Inc.*, 2006 U.S. Dist. LEXIS 38979, *31, 18 Am. Disabilities Cas. (BNA) 248 (EDNY. 2006) (an inference of discrimination based on disability by the trier of fact would be permissible, especially where plaintiff was terminated almost immediately following her disability leave). Plaintiff accepted the job because he was told that he would be working forty hours, or more, regardless whether it was breakfast or not. PSOF ¶29.

In addition, following Plaintiff's return from his short-term disability leave, the Defendant treated Plaintiff less favorably, than similarly situated to him non-disabled employees. Specifically: (i) As Plaintiff was working on the line, 30 feet long, he was limping, was not fast enough; Chef Cohee yelled, "Move", "Move", while not yelling at other line cooks in the similar manner. PSOF ¶55; (ii) Plaintiff's prep time for food service was reduced from three hours to only forty-five minutes. PSOF ¶60. Other employees without disability were allowed to have three hours or more for such preparation. Nofal Aff ¶18; (iii) Natalie Cohee required Plaintiff to sweep the floor, run back and forth to the storage room, while other employees were not asked to do half of the things Nofal was told to do. PSOF ¶61; (iv) Nofal's 90-day probation period was re-started following his return from his short-term disability leave, even though Margaritaville was supposed to add the 30 days that he was off. PSOF ¶¶62-63.

In its motion, the Defendant failed to explain as the matter of law why similarly situated to Plaintiff employees, such as Christopher, Manuel and Marcelo, who did not request a disability-related accommodation or suffer from a disability, were scheduled to work forty hours per week or more, while Plaintiff, who has diabetes and requested a disability-related accommodation, was assigned to work only twenty hours per week or less. The Defendant's explanation for this adverse employment action is that "co-workers were not similarly situated in any respect because they had more availability than Plaintiff" *See* Def. MOL page 12.

It is well-settled, however, that employment characteristics which can support a finding that two employees are "similarly situated" include "similarities in education, seniority, performance, and specific work duties," *DeJesus v. Starr Technical Risks Agency, Inc.*, 03 Civ. 1298 (RJH), 2004 U.S. Dist. LEXIS 19213, 2004 WL 2181403, at *9 (S.D.N.Y. Sept. 27, 2004), and similar requirements for skill, effort and responsibility for jobs performed "under similar

working conditions." *DeJohn v. Wal-Mart Stores E., LP*, 09 Civ. 01315 (GTS), 2013 U.S. Dist. LEXIS 38399, 2013 WL 1180863, at *6 (N.D.N.Y. Mar. 20, 2013). This is generally a question of fact for the jury. *Britt v. Merrill Lynch & Co., Inc.*, 08 Civ. 5356 (GBD), 2011 U.S. Dist. LEXIS 96881, 2011 WL 4000992, at *6 (S.D.N.Y. Aug. 26, 2011).

In this case, based on the work schedules, which includes titles and stations employees were assigned to work, it is clear that Christopher, Manuel, Marcelo and Plaintiff - all worked on the same/similar line. The Defendant failed to establish as the matter of law its defense to Plaintiff's claim of disparate treatment or refute the undisputed evidence (work schedules) that other cooks were not similarly situated to Plaintiff.

Furthermore, the Defendant failed to establish as the matter of law that Plaintiff was not treated less favorably than similarly situated employees because of his disability. In that regard, Plaintiff was required to sweep the floor, run back and forth to the storage room, he was always yelled at. PSOF ¶37 (Exh. D, P's Resp. to Doc. Demands 0003;0036). Other people were not asked to do half of the things Nofal was told to do. PSOF ¶37 Exh. D, P's Resp. to Doc. Demands 0006. (Q. And who was the other person that you're saying wasn't treated that way? A. ...All the line cooks, all the people work on the line with me, she never tell someone move, fast. She never also tell someone, "Go get this, go get me that" Exh. 4, P's Dep. 100: 13-19.

In support of its defense, Margaritaville misquotes Plaintiff's testimony by suggesting that cleaning was part of Plaintiff's job duties as a Sous Chef. Plaintiff specifically testified, however, that cleaning was not part of his duties. Exh. 4, P's Dep. 53: 24-35; 54: 1-6.

The Defendant also failed to establish as the matter of law its defense (or offer any defense whatsoever) to Plaintiff claim that Plaintiff's 90-day probation period was re-started only because of his disability. See *Hill v. Dale Elecs. Corp.*, No. 03-CV-5907, 2004 U.S. Dist. LEXIS

25522, 2004 WL 2937832, at *3 (S.D.N.Y. Dec. 19, 2004) (finding inference of discrimination where the plaintiff's probation was extended and her medical benefits were delayed on the day she informed her co-workers of her temporary disability).

In addition, the Defendant failed to establish as the matter of law that Plaintiff's termination was motivated by his performance, and not, at least in part, by his disability or religion. *See Goyette v. DCA Advertising*, 828 F. Supp. 227, 238, 1993 U.S. Dist. LEXIS 10491, *34, 62 Empl. Prac. Dec. (CCH) P42,629 (SDNY. 1993) (denying summary judgment motion where material issues of fact remain with respect to the plaintiffs' Title VII claims of pretext and mixed motives).

In that regard, the Defendant cites paragraphs 32 through 38 of its statement of material facts, each of which was disputed by Plaintiff with specific reference to the evidence in this case. To collaborate this defense, the Defendant relied on three statements by its current employees which are nothing but inadmissible hearsay. *See Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 566 n.2 (S.D.N.Y. 2010) (citing *H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454-55 (2d Cir. 1991)). (A court will not entertain inadmissible hearsay unsubstantiated by any other evidence in ruling on a summary judgment motion). In addition, the Court should discount the declarations of current employees due to the risk of bias and coercion inherent in that testimony. See *Francis*, 2008 U.S. Dist. Lexis 83369 at 9.

The declarations produced by the Defendant are vague, implausible, inconsistent and contradictory. By way of example, Mr. Taylor's statement indicates timing of 6.55a.m., while according to Mr. Casciello, the unspecified incident took place at 11.30a.m. The Defendant's story clearly does not add up. Nofal Aff. ¶39. In addition, at least one of them (Def. Exh. 1, D00042) contains no date.

Even assuming *arguendo* that Plaintiff's termination was motivated, at least in part, by his work performance, issues of material fact preclude summary judgment on the issue whether Plaintiff's termination was motivated, at least in part, by Plaintiff's disability or religion.

In that regard, when Plaintiff complained to Natalie Cohee about her discriminatory comments (requiring Plaintiff to taste bacon despite his Islamic religion) Natalie Cohee responded, "If you don't like it - leave!", "go home" Nofal Aff. ¶28. The Defendant now claims that Plaintiff left for the day without authorization. Def. Exh. 1 D00043. Requiring Plaintiff to leave the job or tolerate discriminatory comments targeting his religion - is the adverse employment action, which the federal, state and local laws were designed to prevent. While Natalie Cohee denies making such a comment, it is for the Jury, not the Judge, to determine this material issue of fact or credibility issue. *See Liberty Media Corp., LMC v. Vivendi Universal, S.A.*, 923 F. Supp. 2d 511, 522, 2013 U.S. Dist. LEXIS 19485, *26, 2013 WL 541202 (SDNY. February 12, 2013) (credibility determinations lie within the province of the jury, and will not be second-guessed by the court).

Based on foregoing, the material issues of fact preclude the Defendant's motion for summary judgment on Plaintiff's disability- and religion-based discrimination claims under federal, state and local statutes.

II. **Requiring Plaintiff, Who Is A Muslim Sous Chef, To Try Bacon To Do His Job, And Demanding Him To Move Fast Despite Seeing He Was Limping - Was Severe and Pervasive Enough To Interfere With The Terms and Conditions of Plaintiff's Employment With Margaritaville**

A hostile work environment claim requires a showing that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and that a specific basis exists for imputing the objectionable

conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002). This requires demonstrating "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [the] work[] environment." *Cruz v. Coach Stores, Inc*., 202 F.3d 560, 570 (2d Cir. 2000).

In *Muktadir v. Bevacco Inc*., 2013 U.S. Dist. LEXIS 113967, *8, 2013 WL 4095411 (EDNY. August 13, 2013) Court found that managers' and co-workers' comments and actions created an objectively hostile work environment where plaintiff specifically informed defendants that he was a practicing Muslim and could not consume pork or items that had come into contact with pork; yet, defendants purposely provided him only with meals containing pork or meat that had been stored with pork and refused plaintiff's repeated requests to either cook his own food or consume non-Bevacco food obtained from outside the restaurant.

In this case, similar to *Muktadir*, Nofal was subjected to an objectively hostile work environment at Margaritaville. Specifically, Plaintiff's immediate supervisor, Natalie Cohee said: "I know you don't like the bacon. You don't like pork. You Musli[m], right?" Nofal responded, "Yes, I am, ma'am, I am." Haig-Cohee said, "I know you don't eat pork, but you want to know something, when you want to cook something, you have to taste it before you – after you cook it, you got to taste everything." Nofal responded, "Yeah, I don't eat it, but I cook it. I cook the bacon, I don't say no." Haig-Cohee said, "Yeah, but you have to test it too." Nofal responded, "No, I don't eat it."). Natalie Cohee laughed, and when Nofal protested against her discriminatory comments, she said "If you don't like it - go home". Exh. A, P's Compl. ¶46.

This incident was extraordinarily severe for Nofal, and a reasonable victim of discrimination would find such conduct to be severe as well. Plaintiff was given a Hobson's choice: to leave the job or work in a discriminatorily hostile or abusive environment. Such

conduct was sufficiently severe or pervasive to alter the conditions of Nofal's employment and create an abusive working environment on the basis of his religion. *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993).

In addition, as Plaintiff was working on the line, 30 feet long, he was limping, was not fast enough; Chef Cohee yelled, "Move", "Move" PSOF ¶55, Exh. 4, P's Dep. 31: 10-25. Chef Cohee did not yell at other non-disabled line cooks in the similar manner. Exh. 4, P's Dep. 100: 13-19. Plaintiff testified:

> Q.      How do you draw the connection that she was upset because of your disability?...
> A.      ...I look at myself, my disability, and I look at somebody else [without] disability. So, the other person..[Natalie Cohee] [was] treating different[ly] than me. So what's the difference between me and the other person? The difference is I'm having problem with my foot or problem with my toe. And then this is how I make that connection. The other person, they go down to get something, they run...But me, I do it, I never say no to anything, I do it, but I take time. So, when I take time she [says] the words, "Move, move, move" and loud. Exh. 4, P's Dep. 99: 12-25, 100: 1-6.

Based on foregoing, Nofal has established prima facie case of hostile work environment under Title VII, ADA, NYSHRL and NYCHRL, and the Defendant failed to establish as the matter of law its defense to Plaintiff's claim or eliminate issues of material fact. *See Elms v. West Chester Borough*, 2021 U.S. Dist. LEXIS 208047, *4, 2021 WL 5003332 (Penn. East. Dis. Ct. October 28, 2021) (denying motion for summary judgment on a hostile work environment claim where plaintiff, who was limping due to his disability, but was told to "walk faster" and was referred to as a "crippled man"). *See Nash v. Charlotte Mecklenburg Hosp. Auth.*, 1997 U.S. Dist. LEXIS 9665, *19-20 (North Carolina West. Dist. Ct. May 7, 1997) (denying motion for summary judgment on a hostile work environment claim where coworkers imitated plaintiff's limping).

Contrary to the Defendant's argument, using "F word" is not a part of Plaintiff's claims for a hostile work environment and is nowhere to be found in his Complaint. See Exh. A. Compl. Even if Chef Cohee used "F word" specifically as Plaintiff, that was when she demanded him to "Move", which he could not do due to his disability. PSOF ¶47 (Exh. 4, P's Dep. 114: 2-3; 113: 5-18).

In addition, the Defendant failed to establish as the matter of law that Plaintiff was not treated less well due to his disability, when Natalie Cohee required Plaintiff to sweep the floor, run back and forth to the storage room, while other non-disabled employees were not asked to do half of the things Nofal was told to do. PSOF ¶61

Based on foregoing, the discriminatory comments Plaintiff was subjected to during his employment at Margaritaville, were severe and pervasive enough to alter the terms and conditions of his employment, and the Defendant failed to establish as the matter of law that those comments were no more than petty slights and trivial inconveniences.

III.     **The Defendant Failed To Establish As The Matter of Law That Plaintiff's Termination Only Seven Days Following His Complaints of Discrimination Was Based On A Legitimate Non-Discriminatory Reason**

On a summary judgment motion, the court's first step is to determine whether the plaintiff established a prima facie case of retaliation . . . A prima facie case of retaliation requires proof that: (1) the plaintiff was engaged in the protected activity; (2) the employer was aware of the plaintiff's participation in the protected activity; (3) the plaintiff was subject to an adverse employment action; and (4) there is a nexus between the protected activity and the adverse action taken." *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 465 (2d Cir. 1997).

Sequence of events is important in determining the existence of a causal connection in retaliation claim. *See Chertkova v. Conn. Life Ins.*, 92 F.3d 81, 90 (2d Cir. 1996) (stating that a jury could find that the sequence of the discharges, along with the reasons given and the other

circumstances, evidenced gender bias). *See Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001) ("In this circuit, a plaintiff can indirectly establish a causal connection . .. by showing that the protected activity was closely followed in time by the adverse [employment] action."). *See also Rasmy v. Marriott Int'l Inc*., 952 F.3d 379, 392, 2020 U.S. App. LEXIS 7023, *22, 104 Empl. Prac. Dec. (CCH) P46,479 (2nd Cir. 2020) (whether plaintiff's firing five months after a complaint of discrimination raises a factual issue that should be decided by a jury).

In this case, the undisputed evidence (handwritten notes by Mr. Pereira, the Director of Employee Relations and general counsel) shows that Plaintiff indeed complained about discrimination on September 3, 2022. PSOF ¶28 (Exh. F, D's Resp. to Doc. 000203-000205). During his deposition, Mr. Pereira admitted that he told Plaintiff that the way Nofal described the information looked more like a retaliation. PSOF ¶68 Exh. 20, Pereira Dep. 45: 14-17. Only three days following Plaintiff's complaint about discrimination to Mr. Pereira, Margaritaville, through its agents and employees (Mr. Pereira and Natalie Cohee), started collecting statements from Margaritaville current employees (Def. Exh. 12-15), to facilitate Plaintiff's termination. On September 10, 2021, only seven days following his complaints of discrimination, Plaintiff was terminated from Margaritaville on some unspecified pre-textual grounds. PSOF ¶30. In line with *Chertkova*, *Gorman-Bakos* and *Rasmy*, Plaintiff has established a causal connection between his complaints of discrimination and his sudden termination.

In support of its motion, the Defendant argues that "Margaritaville began discussing termination before [Plaintiff] even raised his complaints [about discrimination] and before he took his first leave of absence" See Def. MOL Page 19. The Defendant failed to explain, however, as the matter of law, why the Defendant kept Plaintiff employed for another three months when his performance was allegedly less than satisfactory. Specifically, when Plaintiff

allegedly placed raw meat with ready-to-eat product, which, according to Natalie Cohee was "very severe", Plaintiff was not terminated until after he complained about discrimination. PSOF ¶3 Exh. 19, Cohee's Dep. 34: 2-10. Plaintiff was not even issued a write-up with regard to that alleged incident. Exh. 19, Cohee's Dep. 31: 15-18. Plaintiff was also not reprimanded for the alleged second incident regarding techniques on sauté stations, which allegedly occurred a week later. Exh. 19, Cohee's Dep. 37: 4-7. It is only after Plaintiff complained about discrimination is when the Defendant decided to terminate his employment from Margaritaville. Clearly, a reasonable Jury could find that such "insubordination" was just a pre-text to terminate Plaintiff in retaliation against him for speaking up against discrimination.

The Defendant's reliance on *DiCesare v. Town of Stonington*, 823 Fed. Appx. 19, 24 (2nd Cir. 2020) is misplaced. In that case, the plaintiff was subjected to gradual adverse job actions before the plaintiff engaged in the protected activity. Specifically, in *DiCesare* plaintiff was suspended based on several work-related issues arising a year before he took his FMLA leave. In this case, however, Nofal never received counseling regarding his work performance at Margaritaville. Nofal never got a write-up or verbal warning. Plaintiff never had any performance issues. PSOF ¶13.

Based on foregoing, Plaintiff has established his prima facie case that he engaged in the protected activity, that there is a causal connection between his complaint about discrimination and termination. In response, the Defendant failed to establish as the matter of law that Plaintiff's retaliatory termination was based on a legitimate, non-discriminatory reason. Even if it did, the issues of material fact exist as to whether such reasons were just a cover up for Margaritaville's retaliatory conduct.

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff respectfully requests that Defendant's motion for summary judgment be denied in all respects, together with such other relief this Court deems just and proper.

Dated: October 9, 2023
      New York, New York

                                      Respectfully submitted,

                                      **Akin Law Group PLLC**

                                      */s/ Olena Tatura*

                                      _____

                                        Olena Tatura, Esq.
                                        45 Broadway, Suite 1420
                                        New York, New York 10006
                                        (212) 825-1400

                                        *Counsel for Plaintiff*